[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
APPEARANCES:
 For the State: ASSISTANT ATTORNEY GENERAL SONIA STOLOFF
For the Child:
 ATTORNEY PAUL BREIDBORD Stamford, Connecticut
For DCYS:
 MS. JUDITH KALLEN Social Worker Supervisor Stamford, Connecticut
MS. STOLOFF: We're reconvening on the matter of Rick Morrell, that was a case from this morning. We have Attorney Paul Breidbord representing the child, and from DCYS, this afternoon we have Judith Kallen who is the social worker supervisor. We had taken testimony this morning, your Honor, from Jackie Adams, and she testified on both the petition for extension and petition for termination of parental rights, for Rick Morrell.
THE COURT: The Court has before it the termination for parental rights petition, #91-036, for Rick Morrell, also known as Rick Louis Leonard Morrell, in which the parental rights of his respondent mother Mrs. Oriana Morrell Larson, rights are being terminated. The father is unknown and has been from when the Department of DCYS, Department or Children and Youth Services had taken jurisdiction of this matter on or about November 25, 1987. The respondent mother has appeared on numerous occasions before this court, on an order for temporary custody, where she did appear, but where she had an attorney appointed. And she appeared numerous times in 1988, on 1/6/88, on 2/3/88, and also again in 1988, June 15, '88, and on an original termination petition on 5/3/90, while she was living in Florida. Service has CT Page 4182 been made on her, on this petition, and on prior petitions, at 4561 Coconut Road, Lakeworth, Florida, by certified mail, and the Court finds that it has jurisdiction.
The Court has read the required social study prepared by Jacqueline Adams, dated March 27, 1991, and also the evaluation prepared by the Yale University Child Study Center, which was a parent-child evaluation prepared by Dr. Ellen K. Heyneman, a fellow and child psychiatrist, and also by Fred Volkmar, also a medical doctor and a professor of child psychiatry. The Court heard testimony only from one witness, Jacquelin Adams of the Department of Children and Youth Services. The mother failed to appear, and counsel, previous counsel Mark R. Feller, had filed a withdrawal on or about January 17, 1991.
The allegations in the petition are three. One, the child has been abandon by the respondent mother, in the sense that she failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; two, that the child has been denied, by reason of acts or an act or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well being; and three, there is no ongoing parent-child relationship as defined by law; and these grounds have existed for not less than one year, and the Court so finds, that these grounds have existed for not less than one year.
Based on the testimony of Jacqueline Adams, the Court finds that the child has lived with foster parents for the past three and one half years. And except for one month of his life, he has lived with these foster parents. The natural mother resides in Florida since November of 1988. And before she moved there, her visits with the child were very limited, although she was allowed unlimited visits and was allowed access for visits with the foster parents. She subsequently, in February 11, 1989, remarried a Rick Larson in Florida, and she has given birth to a daughter on 11/28/89.
The child originally was admitted to Stamford Hospital on November 10, 1987 for a urinary infection, CT Page 4183 and temporary custody was granted to the Department of Children and Youth Services on November 19, 1987.
She has suffered from drug abuse and she also was convicted and confined to Niantic during this time, part or this time. And she was to involve herself in drug treatment, and never entered into the program which was recommended and ordered by the Court on 1/6, 1988, to Liberation House or a clinic here in Stamford, and subsequently a month later on 2/3, 1988, to Fairfield Hills. She failed to keep her appointments, nor did she enter any program for correction of her drug problem. She made a few visitations, and, with the foster parents, that were arranged by the Department or Children and Youth Services, and those visits were also arranged for her while she was incarcerated at Niantic.
She had signed a voluntary consent to the termination of parental rights on the original petition on 1/12/90, but subsequently revoked it, and at that time the Court in May of 1990, May 17th, allowed her to withdraw that consent. On June 21, 1990, the Court orders a parent-child assessment for both her and the child. She failed to keep the two appointments that the Yale Clinic at Yale University had arranged for her, without explanation. The last time she visited with her son was June 20, 1990, which was a supervised visit by the Department of Children and Youth Services. There has been no contact whatsoever between the respondent and her child since that date.
Based on the social study and the testimony of Jacqueline Adams, and the report or evaluation from the Yale Child Study Center, the Court finds that by clear and convincing evidence, that the child has been abandoned, the first allegation of the petition, and also, the second allegation, that the child has been denied, by reason of acts or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral and emotional well being, and the third allegation or grounds, that there is no ongoing parent-child relationship as defined by law. I find that the State has proved all of those allegations by clear and convincing CT Page 4184 evidence.
And the Court has considered the evidence from the date that the matter was brought to the Department on November of 1987, just after the child was born, on October 20, 1987, to the date of the petition, the amended petition was filed. The second, or the disposition portion of this hearing requires that the Court to find by again, by clear and convincing evidence, the termination of her parental rights are to the child's best interests. And the Court has to review the six specific findings or make six specific findings under 17-112a.
MS. STOLOFF: Your Honor, it's 17a.
THE COURT: 17a-112 of the Connecticut General Statutes, which is formerly 17-43a.
MS. STOLOFF: That's correct.
THE COURT: And they are, one, that the Court orders, for drug treatment, dated 1/6, 1988 and 2/3, 1988, that were offered to her by the Department of Children and Youth Services were not complied with by the respondent mother. The visitation that the Department also arranged, even when she was incarcerated, were not kept, except on a sporadic basis. She also, the Court ordered evaluation for the Yale study, by court order of Judge Leheny on 6/21/90, also was disregarded by the respondent, and she failed to appear there for two appointments. The same findings are made under the second requirement, that the terms of any court order entered into and agreed by the individual and to the extent by which all parties have fulfilled their obligations under the order, those same orders apply to that section, in that she failed to comply with the orders and the agency has made extended efforts to have her rehabilitate from her drug and other problems, but she did not take advantage of those opportunities.
The third finding regards the feelings and emotional ties the child has with respect to his mother or any guardian who has exercised physical care for at least a year, in which a certain development, that certain emotional ties CT Page 4185 were developed. As I said previously, the child is now three and a half years old, and has been with foster parents in this state since he was one month old, for his entire life except for one month. His mother has found a new life in Florida, and she has had very limited contact with the child during this three and a half year period. Since her relocation in Florida, she visited her son a total of seven times from November, 1988 to the present time. And as I pointed out, the last time she saw the child was in June of 1990, or had any contact whatsoever with the child. There are very strong emotional ties with the foster parents. The child calls them mommy and daddy, and the Yale study points out that the child has now adopted the foster parents as his psychological parents, and refers to them as mommy and daddy as I pointed out. The respondent mother is virtually a stranger, according to this report, based on reports that were reviewed by the Yale Study Clinic that were part of this file. The foster parents are in effect the only parents that he knows, and he is thriving in their care, and the report recommends that he be allowed to remain with them permanently and to be adopted by them. The last visit that the child had with the mother, the child ran from the mother, screamed and kicked and had no relationship that can be considered a normal parent-child relationship. The child is three and a half years old, approximately, born on 10/20/87, under the fourth finding that the Court is about to make. The child is in need or a permanent home as soon as possible. He has developed a strong bond to his foster parents. And as pointed out previously, he should be allowed to remain with them and be adopted so that he can have the opportunity to develop a normal and productive life.
Under the fifth finding, the Court finds that the mother has not adjusted her circumstances or conduct or conditions to make it to the best interests of the child to return to is home in the foreseeable future. And to the extent that the parent has maintained contact with the child as part of the efforts to reunite the child with the parent, provided the Court should give weight to incidental communications, contributions for and the maintenance of regular contact or CT Page 4186 communication with the guardian or other custodian. As previously pointed out, the visits that the mother has made during the past three and a half years were a total of seven, and they have been sporadic, inconsistent. She cancelled many, many of the appointments that were made by the foster parents and by the Department of Children and Youth Services during this period. She has remained in Florida since 1988, and for all intense and purposes, has not made any real efforts to readjust her circumstances to resume her responsibilities as a parent.
The Department, number six, the sixth finding that the Court makes is that the parent has not been prevented from maintaining a relationship with the child by unreasonable acts or conduct or any other person which in this case there is none, or the unreasonable act or any person or agency or by economic circumstances or the parent. The parent has failed to provide any support during this period. The parent has failed to provide a home. The parent has failed to have any plan for this child. She was never prevented from maintaining this relationship by either the Department of Children and Youth Services or any other person or agencies.
The Court finds that it is to the best interests of this child that the parental rights of the respondent be terminated and that the Court hereby finds, hereby declares them terminated.
MS. STOLOFF: Your Honor, we would request that the Court appoint a commissioner for a statutory period.
THE COURT: Yes, I'm looking for that here, the statutory language. And that the Department or Children and Youth Services be appointed the statutory parent for the purpose placing the child in adoption as soon as possible, and that they report back to this Court within 90 days of this judgment.
MS. STOLOFF: Yes, your Honor. Is today the effective date, your Honor, of the termination?
THE COURT: The effective date of the termination is May 6, 1991 on this date. CT Page 4187
MS. STOLOFF: Thank you, your Honor.
THE COURT: You're welcome.
MR. BREIDBORD: Thank you, your Honor.
THE COURT: You're welcome. Just so that I finish that. The petition for the extension of the commitment of Rick Morrell, Docket Number N91-036, is denied, in that the termination of his rights have made it unnecessary for the Court to act on that petition. Isn't that correct?
MS. STOLOFF: Yes. There would be no further need for the —
THE COURT: I thought you should withdraw it. But, I just said denied.
MS. STOLOFF: There's no need for that extension, now that we have the TPR. Thank you.
ROMEO G. PETRONI, JUDGE CT Page 4188
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 4189
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 4190